UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Shermaine Carroll,<br><br>          Plaintiff,<br><br>v.<br><br>Andrew Saul[1], Commissioner of Social Security,<br><br>          Defendant. | Case No. 2:20-cv-01953-DJA<br><br>**Order** |

Before the Court is Plaintiff Shermaine Carroll's motion for reversal or remand (ECF No. 25), the Commissioner's cross motion to affirm (ECF No. 29), and Plaintiff's reply (ECF No. 31). Because the Court finds that the Administrative Law Judge's ("ALJ") application of *res judicata* was erroneous and discrediting of Plaintiff's subjective testimony not supported by clear and convincing reasons, it grants Plaintiff's motion for reversal (ECF No. 25) and denies the Commissioner's cross motion to affirm (ECF No. 29). The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.    Background.**

    ***A.    Procedural history.***

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 18, 2017 alleging disability commencing June 16, 2016. (ECF No. 25 at 3). The Commissioner initially denied Plaintiff's claim on October 25, 2017 and again upon reconsideration on January 30, 2018. (AR 26). The ALJ issued an unfavorable decision finding Plaintiff not disabled because she could perform sedentary work with certain

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security and substituted as a party.

limitations. (*Id.* at 33). The Appeals counsel denied review, making the ALJ's decision the final agency decision. (*Id.* at 1-7).

In a prior decision, dated June 20, 2016, which is now administratively final, ALJ Gary L. Vanderhoof determined that Plaintiff was not disabled. (*Id.* at 27). ALJ Vanderhoof determined that Plaintiff could only "occasionally reach overhead and perform grossly handling with the left upper extremity, [and] could only occasionally and frequently finger with the right hand." (*Id.*). In deciding residual functional capacity ("RFC"), however, the current ALJ—ALJ Barry O'Melinn—concluded that Plaintiff was limited to "frequent overhead reaching, handling, and fingering bilaterally." (*Id.* at 33).

In reaching the RFC determination, ALJ O'Melinn found Plaintiff's treating physicians assistant's—Milena Dhana—opinion unpersuasive. (*Id.* at 38). The ALJ also considered the opinions of Disability Determination Services consultants Larry Pappas, M.D. and Berming Pan, M.D. (*Id.*). Dr. Pappas reviewed Plaintiff's records and authored an opinion on October 23, 2017. (*Id.* at 113-14, 124-25). Dr. Pappas found that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, but only lift up to ten pounds with the right upper extremity[2], stand and/or walk for a total of four hours, and sit about six hours in an eight-hour workday. (*Id.* at 38). Dr. Pan reviewed Plaintiff's records and affirmed Dr. Pappas' opinion on January 30, 2018. (*Id.* at 139-40, 150-51). The ALJ—issuing his opinion on February 25, 2020—found Drs. Pan and Pappas' opinions only partially persuasive. (*Id.* at 38, 41).

The ALJ also considered Plaintiff's testimony regarding her pain. (*Id.* at 33-37). In finding Plaintiff's testimony not entirely consistent with the medical evidence, the ALJ made three relevant points. (*Id.*). First, that while Plaintiff often needed a cane, at times, she had an unassisted normal gait without it. (*Id.* at 35-36). Second, Plaintiff was sometimes noncompliant

---

[2] It is unclear to the Court if this is a typo in the doctors' records that carried through to the ALJ's decision and the parties' briefs. Most of Plaintiff's medical records and the parties' briefs indicate that Plaintiff experienced symptoms of pain and limitation in her left upper extremity, rather than her right. (AR 33-34). But given that the Court is remanding the case on other grounds, this ambiguity is inconsequential to the decision. In the event that this is not a typo, the ALJ is encouraged to clarify this point on remand.

with her opioid medication. (*Id.* at 37). Third, Plaintiff described activities of daily living—including aquatic exercise, personal care activities, light household chores, driving, and typing on a laptop—consistent with the ALJ's residual functional capacity. (*Id.*).

### B. The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 26-41). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 16, 2016. (*Id.* at 30). At step two, the ALJ found that Plaintiff has the following severe impairments: disorders of the cervical and lumbar spine, left hip, left upper extremity, and bilateral shoulders. (*Id.*). At step three, the ALJ found that the Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 32). In making this finding, the ALJ considered Listings 1.04, 1.00B2b, 1.02A, 1.03, 1.02, 1.00B2c, 11.14A, and 11.14B. (*Id.* at 32-33).

At step four, the ALJ found that Plaintiff has a residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) subject to limitations. (*Id.* at 33). Those limitations include that Plaintiff "could only occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. In addition, the claimant could occasionally balance, stoop, kneel, crouch, and crawl. The claimant would require the use of a cane for ambulation. The claimant would be limited to frequent overhead reaching, handling, and fingering bilaterally. The claimant must avoid even moderate exposure to operational control of moving machinery, unprotected heights, and moving machinery [sic]." (*Id.*). At step five, the ALJ found Plaintiff incapable of performing any past relevant work but that she could perform occupations such as document preparer, sorter, or final assembler. (*Id.* at 40). Accordingly, the ALJ found that Plaintiff had not been disabled from June 16, 2016, through the date of the decision. (*Id.* at 40).

In making this determination, the ALJ pointed to the vocational expert's—Kathleen Byrnes—testimony. (*Id.*). Byrnes had noted that the Dictionary of Occupational Titles does not address an overhead reaching limitation so, relying on her education, training, and experience, Byrnes provided document preparer, sorter, and final assembler as jobs that would fit the

hypothetical of someone with Plaintiff's RFC. (*Id.* at 78). Plaintiff's attorney also questioned Byrnes and asked her, "[i]f we assume the same individual from the first hypothetical question but this individual, instead of limited to frequent handling and fingering bilaterally, they can only occasionally handle and finger with the dominant left arm[3], would the same jobs be available?" (*Id.* at 79). Byrnes responded, "[n]o" and specified that, based on her education, training, and experience, "the overall rating of handling and fingering in that scenario…would drop to occasional bilaterally. And in that case, that would rule out most, if not all, sedentary jobs." (*Id.*).

## II.    Standard.

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

---

[3] Plaintiff is left-handed. (AR 278).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

**III.     Disability evaluation process.**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical

evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

**IV.   Analysis and findings.**

   ***A.   The ALJ did not need to further develop the record.***

      1.   The parties' arguments.

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to develop the record further. (ECF No. 25 at 11-12). Because state agency reviewing physicians Dr. Pappas and Dr. Pan reviewed Plaintiff's medical records in October of 2017 and January of 2018, respectively, Plaintiff asserts that "the ALJ was left to translate a large portion of the medical evidence without the help of a medical doctor when assessing Carroll's residual functional capacity." (*Id.*). Because of this, Plaintiff claims that "it is unclear how the ALJ landed on [his] eventual residual functional capacity when no doctor

reviewed the bulk of the record." (*Id.*).  Plaintiff points out that medical records post-dating Drs. Pan and Pappas' review—including ongoing pain treatments, diminished hand sensation, spine discomfort, an antalgic gait, limited range of motion, and mild degenerative disc changes—support a more restrictive RFC. (*Id.* at 13).

The Commissioner argues in response that there is no rule preventing the ALJ from assessing Plaintiff's RFC without a medical opinion that considered all the medical evidence. (ECF No. 29 at 7).  Rather, the ALJ properly relied on all relevant evidence in the record, which supported the sedentary RFC. (*Id.* at 8-9).  On the other hand, Drs. Pappas and Pan—along with Plaintiff's treating physician's assistant Dhana—had findings inconsistent with the record. (*Id.* at 8-9).  But those findings were not so inconsistent that they rendered the record insufficient for the ALJ to reach a conclusion about whether Plaintiff is disabled. (*Id.* at 11).  And because the evidence was not ambiguous or inadequate, the ALJ had no duty to develop the record. (*Id.*).

Plaintiff replies to argue that the avenues the ALJ could have taken instead of interpreting the medical evidence on his own were easily accessible. (ECF No. 31 at 4-5).  But instead of pursuing them, the ALJ improperly interpreted the evidence on his own. (*Id.*).  This resulted, Plaintiff argues, in the ALJ overlooking the fact that Plaintiff's condition worsened after the state agency consulting doctors reviewed her medical records. (*Id.*).

        2.        <u>Legal standards.</u>

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC.  20 C.F.R. § 416.920(a)(4)(iv).  It is well settled that it is the ALJ, and not a doctor's, responsibility to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1546(c) (explaining that the ALJ is responsible for assessing RFC); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  Further, where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The court will

only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

An ALJ also has an independent duty to develop the record fully and fairly. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). But this duty to develop the record is triggered only if the evidence is ambiguous or the record is inadequate to decide. *Id.*; *Armstrong v. Comm'r of Soc. Sec.*, 160 F.3d 587, 589–90 (9th Cir. 1998). In such a case, the ALJ may develop the record in several ways, including by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Tonapetyan*, 242 F.3d at 1150; *see also* 20 C.F.R. § 404.1512.

### 3. Analysis.

The ALJ's did not need to develop the record further to make his RFC determination. Plaintiff's argument considers the analysis backwards. She asserts that the evidence on which the ALJ relied was inadequate *because* the ALJ did not obtain another opinion to further develop the records from January 2018 to February 2020. But the duty to develop is not triggered unless the records are inadequate in the first place. And Plaintiff does not argue that the evidence the ALJ considered in reaching a more restrictive RFC were inadequate. To the contrary, Plaintiff concedes that "the ALJ gave a more restrictive functional capacity assessment because the evidence clearly supports a greater level of functional imitation after the State agency doctors' respective reviews." (ECF No. 25 at 12). Because it is the ALJ's—not a doctor's—responsibility to determine RFC, the ALJ appropriately considered the evidence to create the RFC. As Plaintiff acknowledges, the ALJ considered evidence post-dating the state agency opinions that supports the ALJ's " more restrictive residual functional capacity." (*Id.* at 13). The Court thus finds that the ALJ did not err by not further developing the record.

>   **B.   The ALJ improperly applied res judicata regarding Plaintiff's upper extremity limitations.**
>
>       1.   The parties' arguments.

Plaintiff asserts that the ALJ improperly applied *res judicata* because he determined that Plaintiff had a less restrictive RFC regarding her left extremity than the previous ALJ. (ECF No. 25 at 14). When making that determination, the ALJ did not point to any evidence that Plaintiff's arm had improved. (*Id.* at 17). Moreover, the state agency consulting doctors did not reference the prior ALJ decision. (*Id.* at 18). Plaintiff asserts that the error of failing to consider Plaintiff's diminished capabilities of using her left upper extremity is harmful because it impacted the decision of disability. (*Id.* at 19). Plaintiff points to the vocational expert's testimony that, if Plaintiff could only occasionally use her dominant left arm and hand, that a finding of disabled would be warranted. (*Id.*). Plaintiff thus argues for a reversal and order for payment of benefits. (*Id.*).

The Commissioner argues in response that the ALJ properly considered the prior ALJ's disability decision because the ALJ considered new evidence that showed Plaintiff's left upper extremity had *improved* since the last decision. (ECF No. 29 at 15). The Commissioner explains that contrary to Plaintiff's argument, the ALJ revised Plaintiff's RFC with new information demonstrating that Plaintiff was able to function well. (*Id.* at 15-16). This evidence showed that Plaintiff had moderate pain relief with medication, an improvement in daily activities and an active range of motion, and normal muscle strength, amongst other new evidence. (*Id.* at 15-16). The state agency reviewing doctors also reviewed data from December 2016, September 2017, and October 2017 which indicated improved left arm functioning. (*Id.*). Plaintiff relied on her initial briefing in reply. (ECF No. 31).

>       2.   Legal standards.

The Ninth Circuit recognizes a presumption of continuing non-disability when a claimant's security income application has been denied. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). "[R]es judicata should not be rigidly applied in administrative proceedings." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (citing *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir.

1988)). Normally, an ALJ's findings that a claimant is not disabled "creates a presumption that the claimant continued to be able to work after that date." *Id.* at 827 (quoting *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985)). However, the presumption does not apply "where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." *Id.*; *see also Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985).

### 3. Analysis.

The ALJ's decision to deviate from the prior ALJ's RFC regarding Plaintiff's upper left extremity is not supported by substantial evidence. The ALJ acknowledged that Plaintiff had a change in circumstances that rebutted the presumption of non-disability. (AR 33). The ALJ adopted some of the prior ALJ's findings, but did not adopt the findings in their entirety, instead finding that "the claimant also has the additional limitations contained in the residual functional capacity…" (*Id.*). Specifically, the new ALJ determined that the prior ALJ's RFC of light work should be changed to sedentary work and that Plaintiff would need a cane to ambulate. (*Id.* at 33). But the ALJ changed the previous ALJ's determination about Plaintiff's upper extremity in the opposite direction, lessening the prior ALJ's limitation. (*Id.* at 38). It is not entirely clear from this record how the ALJ reached this result.

As the Commissioner points out, the ALJ did analyze evidence that demonstrated that Plaintiff's left arm improved somewhat over time. But these records also demonstrated certain continued impairments. (AR 531-32) (showing that, on December 29, 2016, Plaintiff demonstrated "worsening symptoms since last office visit"); (AR 507-08) (showing that on September 28, 2017, Plaintiff reported "moderate pain relief with current regimen" and was "able to function well and perform ADLs while taking current pain medications" but that she had "diminished sensation in the left hand" and "tenderness to palpation… trapezius muscles"); (AR 443-46) (explaining that on October 10, 2017, Plaintiff "made objective improvements with [s]trength" but continued "to present with impairments involving [s]trength, [p]ain" and that

"[p]atient has [b]een discharged per patient request due to insurance complications"); (AR 572-73) (explaining that on June 13, 2018, Plaintiff had been "doing some swimming which is very beneficial," that she demonstrated "moderate pain relief with current medication" but still had "tenderness to palpation…trapezius muscles" and "diminished sensation in the left hand") (AR 590-91) (showing that on August 31, 2019 Plaintiff presented with "pain radiat[ing] to the left arm," "left hand pain with light touch," "pain better with: pain medications, ice, massage," "pain worsens with: activities of daily living," "tenderness over…left trapezius area," and a "limited active [range of motion] in all planes"). Analyzing this evidence alone—which could support more than one rational interpretation—the Court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). However, the ALJ's discussion of the state agency doctors' analysis undercuts substantial evidence.

Notably, state agency reviewing doctors—Dr. Pappas and Dr. Pan—found that Plaintiff would be limited to "frequent overhead reaching bilaterally and frequent handling and fingering with the left upper extremity." (AR 38). But the ALJ explained that this opinion was "only partially persuasive because it is not entirely consistent with the evidence in the record." (AR 38). In finding the opinion inconsistent, the ALJ noted that "the claimant had left arm weakness, as well as pain in her arm and hand…the claimant was left hand dominant, and she indicated her pain worsened with use of her left arm." (*Id*.). Perplexingly, the ALJ then adopted the "frequent" limitation that he had just found only partially persuasive. (*Id.*).

While the Court does not agree with Plaintiff that the ALJ pointed to no evidence of improvement in Plaintiff's arm, it does find Plaintiff's argument that, "by the ALJ's own admission, the State agency doctors were only partially persuasive…" compelling. (ECF No. 25 at 18). The Court also agrees with the Plaintiff that, if the ALJ did err in finding RFC, the error would be outcome determinative. (*Id.* at 19). As the vocational expert pointed out, if a person like Plaintiff were limited to occasional handling and fingering bilaterally, "that would rule out most, if not all, sedentary jobs." (AR 79). The Court thus finds that the ALJ erred in vaguely articulating why he increased Plaintiff's limitation on her upper left extremity from occasional to

frequent reaching, handling, and fingering bilaterally. Without a clearer explanation, the Court cannot find that the ALJ's determination was supported by substantial evidence and remands this case for further proceedings on this issue. The record could benefit from further proceedings on the topic of Plaintiff's RFC regarding her upper extremities, so remand, not awarding benefits, is the appropriate remedy.

### C. The ALJ improperly rejected Plaintiff's subjective pain and limitation testimony.

#### 1. The parties' arguments.

Plaintiff argues that the ALJ improperly found Plaintiff's testimony about her pain inconsistent with the medical evidence. (ECF No. 25 at 20). She argues that the ALJ failed under the second step of the Ninth Circuit's two step analysis because the ALJ did not provide "specific and legitimate reasons for rejecting the pain and limitation testimony." (*Id.* at 21). Instead, the ALJ "summarize[d]" and provided "nonspecific boilerplate conclusion[s] that testimony [was] inconsistent…" (*Id.* at 21-22). Plaintiff argues that the ALJ made three mistakes. (*Id.* at 22-25). First, the ALJ improperly noted that Plaintiff often did not need a cane but ignored that Plaintiff frequently needed to use one and could only ambulate a short time without one. (*Id.*). Second, the ALJ pointed out that Plaintiff was noncompliant with her medication but ignores that Plaintiff had insurance issues that prevented her from purchasing medication and wished to avoid opioid dependence. (*Id.*). While the ALJ noted that Plaintiff did not show signs of dependency, Plaintiff argues that "[w]aiting for an individual to become dependent on opioids is detrimental to society." (*Id.*). Third, even though the ALJ noted that Plaintiff could do aquatic exercises, perform personal care, and do some chores, those activities do not mean that Plaintiff could work. (*Id.*).

The Commissioner responds that the ALJ appropriately found Plaintiff's complaints inconsistent with the records because Plaintiff's records indicated good response to treatment and daily activities that suggested greater functioning. (ECF No. 29 at 16-17). Treatment notes showed Plaintiff's hip and arm improving with physical therapy, surgery, and medication. (*Id.* at 19). Plaintiff also reported regular exercise, beneficial aquatic exercises, performing personal care activities, doing light chores, and the ability to drive a car and shop in stores. (*Id.* at 20).

Plaintiff was able to type on a laptop and was beginning to write a book. (*Id.*). The ALJ considered these activities commensurate with work activity or demonstrative that Plaintiff's subjective complaints were exaggerated. (*Id.*). The Commissioner argues that, if the Court were to find reversible error, remand—not an order granting benefits—would be appropriate. (*Id.*). The Commissioner explains that inconsistencies between Plaintiff's subjective complaints and the state agency doctors would still need to be resolved, as would the conflicts between physician's assistant Dhana's opinion and those of the state agency doctors. (*Id.*). Plaintiff relied on her initial briefing in reply. (ECF No. 31).

      2.  <u>Legal standards.</u>

   An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

   Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

   The Ninth Circuit recognized the clear and convincing evidence standard to be "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v.*

*Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).  An ALJ's failure to provide "specific, clear and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other factors: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

### 3.   Analysis.

The ALJ did not provide clear and convincing reasons to discredit Plaintiff's subjective testimony.  First, while the ALJ noted that Plaintiff's lower back and left hip pain improved somewhat with surgery, the portions of the record, activities of daily living, and Plaintiff's testimony to which the ALJ cite are not clear and convincing reasons to discredit her testimony.  In addressing Plaintiff's left leg pain, the ALJ outlines a long history of medical records demonstrating intense pain, surgeries, and difficulty moving.  (AR 34-35).  While Plaintiff's MRI in February 2016 demonstrated only minimal tendinopathy and mild degenerative tearing of the superior labrum, Plaintiff nonetheless underwent surgery a few months later.  (*Id.*).  Following the surgery, Plaintiff experienced small improvements, but later experienced pain with motion, left hip paresthesia, and a reduced range of motion.  (*Id.*).

Another MRI in February of 2017 demonstrated separation of the labrum from the bone and Plaintiff was diagnosed with a left hip recurrent labral tear and chondromalacia of the acetabulum.  (*Id.*).  Plaintiff underwent another surgery in April of 2017, after which she reported worsened pain, decreased strength, and decreased joint mobility.  (*Id.*).  While the ALJ noted that Plaintiff acknowledged improvements in her range of motion with physical therapy, improvements in pain in September of 2017, "stable" pain in 2018, and some relief with lidocaine

patches, evidence after this date demonstrates Plaintiff still had difficulty ambulating. (*Id.*). In November 2019, an MRI of Plaintiff's lumbar spine showed minor disc bulges and certain of Plaintiff's records showed that she ambulated with a cane. (*Id.* at 34-35, 613, 623). In other words, while the ALJ pointed to some reasons why Plaintiff's pain might have improved slightly, he did not point to clear and convincing reasons to discredit her testimony of the intensity, persistence, or functionally limiting effects of her pain.

Second, Plaintiff's noncompliance with medication does not constitute clear and convincing evidence. The Commissioner does not address Plaintiff's arguments that noncompliance with medication does not constitute clear and convincing evidence in the response. And the Court agrees with Plaintiff that her noncompliance—due in part to issues with her insurance and in part to Plaintiff's desire to avoid dependency—does not constitute a clear and convincing reason to reject her pain testimony.

Third, the ALJ did not clearly articulate the inconsistencies between Plaintiff's activities and her alleged level of limitation. The ALJ pointed out that Plaintiff testified that she had difficulty lifting more than five or ten pounds, bending, standing, reaching, walking more than half a block without pain, sitting, climbing stairs, remembering, concentrating, and using her hands. (*Id.* at 34). Plaintiff's activities of daily living are not inconsistent with this testimony. That Plaintiff could do aquatic exercises at some point in 2018 and exercised regularly back in 2016 does not clearly and convincingly give reason to discredit her testimony that moving is difficult. Nor does her explanation that she could perform personal care activities, household chores, simple meal preparation, and laundry, because—as Plaintiff points out—she needed assistance or a crutch to perform these tasks. (ECF No. 25 at 24). And while she could shop and drive, the ALJ noted that her trips took her longer and she had difficulty pushing a shopping cart. (AR 37). These activities are not inconsistent with the testimony which the ALJ discredited. (ECF No. 34). The Court thus finds that remand for further proceedings on this topic is necessary.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 25) is **granted** for further proceedings on the below topics:

- The ALJ is directed to further develop the reasons why he changed Plaintiff's upper left extremity limitation from the prior ALJ's RFC that Plaintiff could "only occasionally reach overhead and perform grossly handling with the left upper extremity, could only occasionally finger with the left hand and frequently finger with the right hand…" (AR 27) to the current RFC that Plaintiff is "limited to frequent overhead reaching, handling, and fingering bilaterally" (AR 33).
- The ALJ is directed to further develop the connections between the portions of Plaintiff's subjective testimony he asserts is not credible with evidence he asserts undermines its credibility.

**IT IS FURTHER ORDERED** that Defendants cross motion to affirm (ECF No. 29) is **denied**. The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: December 29, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE